Nebraska Supreme Court Online Library
www.nebraska.gov/apps-courts-epub/
08/11/2026 12:08 AM CDT

- 412 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

In re Interest of Trevor S., Jr., et al.,
children under 18 years of age.

State of Nebraska, appellee and cross-appellee, v.
Trevor S., Sr., appellant, and Chyna B.,
appellee and cross-appellant.

___ N.W.3d ___

Filed August 4, 2026.    No. A-25-811.

1. **Juvenile Courts: Appeal and Error.** An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings.
2. **Rules of Evidence: Hearsay.** A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception.
3. ____: ____. Neb. Evid. R. 803(4), Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2024), is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment.
4. ____: ____. Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding in determining the admissibility of the evidence under Neb. Evid. R. 803(4), Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2024).
5. **Rules of Evidence: Hearsay: Proof.** Statements having a dual medical and investigatory purpose are admissible under Neb. Evid. R. 803(4), Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2024), only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional.
6. **Juvenile Courts: Jurisdiction: Parental Rights.** The purpose of the adjudication phase is to protect the interests of the child. The parents'

- 413 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

rights are determined at the dispositional phase, not at the adjudication phase.

7. **Juvenile Courts: Jurisdiction: Proof.** At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024), the State must prove the allegations of the petition by a preponderance of the evidence.

8. **Juvenile Courts: Parental Rights: Words and Phrases.** "Proper parental care" under Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024) includes providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. It commands that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his or her health or morals.

Appeal from the Separate Juvenile Court of Douglas County: Mary M.Z. Stevens, Judge. Affirmed.

Nicholas E. Wurth, of Law Offices of Nicholas E. Wurth, for appellant.

Hailey Russell, Deputy Douglas County Attorney, for appellee State of Nebraska.

Thomas C. Riley, Douglas County Public Defender, and Nicole J. Tegtmeier for appellee Chyna B.

Riedmann, Chief Judge, and Bishop and Freeman, Judges.

Riedmann, Chief Judge.

## I. INTRODUCTION

Trevor S., Sr., appeals, and Chyna B. cross-appeals, the order of the separate juvenile court of Douglas County adjudicating their eight children. Finding no error, we affirm the order of the juvenile court.

## II. BACKGROUND

### 1. Removal of Children

On April 22, 2025, law enforcement was dispatched to a library in Omaha, Nebraska, due to reports that there were children in a van in the parking lot and it was unknown if

- 414 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

they were homeless or had slept in the van overnight. The windows of the van were covered with blankets, and an officer made contact with Trevor. Trevor confirmed his wife and children were in the vehicle, stating that they were not from Nebraska but had been there for about a week. Trevor informed officers that the family was driving to another state but had stayed in Omaha the night before because their teenage son had run away. At the time officers contacted the family, there were seven remaining children in the van. The children's ages ranged from 1 to 13 years old.

There was a smell of "bad body odor," and some of the children had dirty clothing, matted hair, and teeth that appeared rotted. Officers learned that Trevor S., Jr. (Trevor Jr.), was the child that had run away. Officers did not observe car seats in the van, and at least three of the children required car seats. Trevor was arrested for child neglect and for a warrant on a charge from Lancaster County. When searched, officers located methamphetamine on Trevor's person. Chyna was arrested for child neglect. The children were removed from Trevor's and Chyna's care.

## 2. Medical Examinations and Forensic Interviews

Some of the children had medical examinations after being removed from Trevor's and Chyna's custody, and some were forensically interviewed. The examinations occurred shortly after the children were removed from Trevor's and Chyna's custody, but the forensic interviews happened months later.

Trevor Jr., born in May 2010, had a physical examination on April 29, 2025, and was forensically interviewed on July 7. Aylah S., born in October 2011, had a physical examination on April 29, 2025, and was forensically interviewed on July 7. Aaneiyah S., born in September 2012, was forensically interviewed on July 7, 2025. Thai S., born in April 2018, had a medical examination on May 2, 2025, and was forensically interviewed on June 6. Aa'ziyahn S., born in January

2021, was medically examined on May 2, 2025. The medical examinations revealed that Thai and Aa'ziyahn had "pretty significant dental decay." Several of Thai's molars were rotted badly enough that they looked broken. Thai also had a speech impediment. Trevor Jr. had cavities.

Makenzie Mantz forensically interviewed four of the children. When Mantz conducts interviews, she and a member of the medical staff will introduce themselves to the child prior to the interview. During their interviews, the children were told that they may have a medical examination after the interview and that what they discussed in the interview would be shared with a nurse to help with the examination. The children agreed to tell the truth, although Trevor Jr. stated there were two specific topics that he would not be honest about. Mantz told Trevor Jr. that if it was hard to tell the truth about something then he should tell her and they would discuss it. After the interviews, Trevor Jr. declined to have a medical examination, but he had not informed Mantz that he was going to decline during the interview. Thai did not receive a medical examination after his interview because the medical provider determined that nothing new was shared in the forensic interview. Both Aylah and Aaneiyah had medical examinations after their forensic interviews.

The interviews revealed that all eight children had been living in the van with Trevor and Chyna. When the family needed to shower, they would use gas stations or camping sites and sometimes go to an outreach center, hotels, or a friend's home. They would use the bathrooms at stores, gas stations, or use a "porta potty." However, sometimes Chyna would not allow the children to enter a store to use a restroom because the children looked "messy," and instead they would use a "porta potty" in the van. They would wash their clothes at laundromats. All four of the children reported that to earn money, some of the children would panhandle. Aylah said it was her idea to panhandle because they needed to wash clothes.

- 416 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

Although the children all reported having food, Trevor Jr. stated that sometimes he did not get to eat as much as he wanted, and Thai confirmed there were times when he was hungry and not able to get food and he would "act up." Both Trevor Jr. and Thai recalled that the temperature in the van could get very hot. Thai stated that there were times when Trevor and Chyna would leave the children and play "slots." Aylah and Aaneiyah said the children attended online school when they had access to the internet, but Trevor Jr. stated they had stopped attending online school sometime in 2024. Thai reported he had not been to school.

### 3. Petitions and Adjudication

The State filed a petition and supplemental petition alleging the children were within the provisions of Neb. Rev. Stat. § 43-247(3)(a) (Cum. Supp. 2024) because they lacked proper parental care by reasons of the faults or habits of Trevor and Chyna. Specifically, the State alleged that law enforcement responded to a well-being check; found the children living out of a van; the children had "dirty clothing, bad body odor, matted hair, and rotten teeth"; that the children said they had not eaten or had water in 2 days; that Trevor and Chyna were booked into jail on multiple counts of child neglect; that Trevor and Chyna had failed to provide the children with safe, stable, and/or appropriate housing; that Trevor and Chyna had failed to provide proper parental care, support, supervision, and/or safety to the children; and that due to the allegations, the children were at risk of harm. The State also alleged that Trevor's current and/or prior use and/or possession of alcohol and/or controlled substances put the children at risk of harm.

At the adjudication hearing, as relevant to this appeal, both Trevor and Chyna objected to the forensic interviews on the basis that they were hearsay. The juvenile court received the interviews into evidence. The juvenile court found that the children were within the provisions of § 43-247(3)(a) by a

- 417 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

preponderance of the evidence. However, it dismissed the allegation that officers were advised that the children had not eaten or drank anything for 2 days due to lack of evidence. Trevor appeals, and Chyna cross-appeals.

## III. ASSIGNMENTS OF ERROR

Trevor assigns that the juvenile court erred in (1) admitting the forensic interviews of the children into evidence over his objections and (2) finding that the State met its burden of proof by offering sufficient evidence to adjudicate the minor children under § 43-247(3)(a). Chyna assigns that the juvenile court erred in (1) admitting the forensic interviews of the children, as well as the testimony of Mantz and two medical professionals, into evidence over her objections and (2) finding sufficient evidence to adjudicate the children under § 43-247(3)(a). As Chyna's arguments supporting her assigned errors are similar to Trevor's arguments, we address them together.

## IV. STANDARD OF REVIEW

[1] An appellate court reviews juvenile cases de novo on the record and reaches its conclusions independently of the juvenile court's findings. See *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022).

## V. ANALYSIS

### 1. Forensic Interviews

Both Trevor and Chyna assign that the juvenile court erred in admitting the forensic interviews of the children into evidence over their objections. Chyna also assigns that the juvenile court erred in admitting the testimony of Mantz and two medical professionals who examined the children into evidence. We find that the juvenile court did not err in admitting the interviews or the testimony into evidence because they fell within the medical purpose exception to the hearsay rule.

[2] A declarant's out-of-court statement offered for the truth of the matter asserted is inadmissible unless it falls within a definitional exclusion or statutory exception. *In re*

- 418 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

*Interest of Xandria P., supra*. Neb. Evid. R. 803(4), Neb. Rev. Stat. § 27-803(4) (Cum. Supp. 2024), provides that a statement is not excluded by the hearsay rule if it is "made for purposes of medical diagnosis or treatment and describing medical history, or past or present symptoms, pain, or sensations, or the inception or general character of the cause or external source thereof insofar as reasonably pertinent to diagnosis or treatment."

[3,4] Rule 803(4) is based on the notion that a person seeking medical attention will give a truthful account of the history and current status of his or her condition in order to ensure proper treatment. See *In re Interest of Xandria P., supra* (discussing § 27-803(3) (Reissue 2016)). The Nebraska Supreme Court has held that statements made to a forensic interviewer in a medical setting may be admissible under rule 803(4) even though the interview has the partial purpose of assisting law enforcement. See *State v. Vigil*, 283 Neb. 129, 810 N.W.2d 687 (2012). The fundamental inquiry to determine whether statements, made by a declarant who knew law enforcement was listening, had a medical purpose is if the challenged statement has some value in diagnosis or treatment, because the patient would still have the requisite motive for providing the type of sincere and reliable information that is important to that diagnosis and treatment. *In re Interest of Xandria P., supra*. Whether a statement was both taken and given in contemplation of medical diagnosis or treatment is a factual finding in determining the admissibility of the evidence under rule 803(4). See *In re Interest of Xandria P., supra*.

[5] Mantz explained that some goals of a forensic interview include gathering information from children about alleged abuse for law enforcement investigations, as well as information for medical treatment and mental health referrals. Statements having a dual medical and investigatory purpose are admissible under rule 803(4) only if the proponent of the statements demonstrates that (1) the declarant's purpose in making the statements was to assist in the provision of

- 419 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

medical diagnosis or treatment and (2) the statements were of a nature reasonably pertinent to medical diagnosis or treatment by a medical professional. See *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022).

Under rule 803(4), the admissibility of a victim's statements in a recording is not distinct from the admissibility of the statements themselves. See *In re Interest of Xandria P., supra*. The fundamental inquiry when considering a declarant's intent is whether the statement was made in legitimate and reasonable contemplation of medical diagnosis or treatment. *Id*. Under rule 803(4), the appropriate state of mind of the declarant may be reasonably inferred from the circumstances; such a determination is necessarily fact specific. See *In re Interest of Xandria P., supra*.

Chyna argues that much of the case law discussing this hearsay exception relates to sexual assault, which "present[s] a clear nexus between statements made in the forensic interview and medical treatment – the physical nature and contact of an alleged sexual assault, often warrants further medical attention." Brief for appellee on cross-appeal at 21. However, nothing in the statute or case law limits this exception to statements made to forensic interviewers related only to sexual assault. A child who has been subject to past physical abuse, such as certain types of discipline, could be in as much need of medical treatment as a child victim of sexual assault. We reject this limitation on the application of the medical purpose exception.

### (a) Declarant's Purpose

Based on the circumstances, it can be reasonably inferred that the children's purpose when making the statements was to assist in obtaining medical diagnosis or treatment. Mantz stated that the center where the interviews occurred offers foster care examinations, as well as medical examinations that happen after interviews. The children received foster care examinations at the same place where they were later

- 420 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

forensically interviewed, so they were aware that medical examinations occurred there.

During the interview, each child was told that he or she may have a medical examination and that the information from the interview would be shared with a nurse. Mantz also informed the children that they were there to make sure each child was safe and healthy. She also impressed upon the children the importance of telling the truth in the interview. Trevor Jr. specified two topics that he would not be honest about. Mantz told him that if it was hard to tell the truth about something, then he should tell her and they would discuss it. The other children confirmed they would tell the truth during the interviews.

During his interview, Trevor Jr. stated he thought he had been told he was there for questions and a physical. Although Trevor Jr. declined to have a medical examination after his interview, he did not decline it prior to, or during, the interview. Thai did not have a medical examination because a medical provider determined that no new information was collected in the interview and did not warrant an examination. Both Aylah and Aaneiyah received medical examinations following their interviews. Even if, as Trevor argues, there was no evidence the children made allegations of abuse that would have informed their understanding of why they were being interviewed or examined, the children were still aware that they may be receiving medical treatment and that the information from the interview would be shared with a medical provider. They were also aware that telling the truth during the examination was important.

Trevor and Chyna argue that because the children received medical examinations prior to their forensic interviews, the interviews were not for a medical purpose. One of the medical professionals who had performed some of the examinations stated that in her training and experience, it was standard protocol that children entering foster care received an initial medical examination.

- 421 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

Although the children received medical examinations prior to their forensic interviews, they were all aware that they could have another medical examination following the interview and that the information from the interview would be shared with a medical provider. Mantz confirmed that the procedure and disclosures regarding medical examinations still occur even if a child later declined to be examined. The children still had the same motivation to tell the truth in the interviews because they were aware their statements were intended to be used to receive medical treatment, even if they later did not receive an examination. From the circumstances, it can reasonably be inferred that the children's purpose in making the statements was to assist in the provision of medical diagnosis or treatment. See *In re Interest of Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022).

### (b) Pertinent to Diagnosis or Treatment

The State also was required to show that the statements were of a nature reasonably pertinent to diagnosis or treatment by a medical professional. In the interviews, the children were asked questions regarding their living situations and how the financial needs of the family were met, as well as questions about schooling, eating, and hygiene. They were also asked about the disciplinary practices Trevor and Chyna employed when the children misbehaved. Whether the children's nutritional and other physical needs were met, the discipline practices were employed, and their hygiene and schooling needs were met were all issues that could require additional medical or mental health care. The same is true with the children's panhandling to earn money to support the family. The information gathered during the forensic interviews was relevant to determining what medical and mental health care needs the children may have had. The medical providers' reliance on this information is evinced by the decision not to reexamine Thai following his interview.

- 422 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

Chyna argues that the necessary information had been gathered during the medical examinations, which had occurred when the children entered foster care, and that the forensic interviews "were much more indicative of a fishing expedition for additional evidence in criminal and civil prosecutions than interviews conducted for a legitimate medical purpose." Brief for appellee on cross-appeal at 27-28. Mantz did not recall being provided with summaries of the medical examinations the children received when they were first taken into foster care prior to conducting the forensic interviews. She could not have conducted a "fishing expedition" for additional evidence when she was unaware of the information that had previously been gathered. This reinforces that Mantz' goal in the forensic interviews was to determine whether the children were in need of medical or mental health care based upon the circumstances described by the children.

From the circumstances surrounding the interviews, it can reasonably be inferred that the children's purpose in making the statements was to assist in the provision of medical diagnosis or treatment. The statements were of a nature reasonably pertinent to the diagnosis or treatment by a medical professional. Just as the juvenile court stated it would give weight only to statements relevant and related to medical diagnosis or treatment, an appellate court disregards inadmissible or improper evidence in its de novo review. See *In re Interest of Xandria P., supra*. Upon our de novo review, we determine the juvenile court did not err in admitting the forensic interviews or the testimony from Mantz and the medical professionals into evidence. This assignment of error fails.

## 2. Adjudication

[6,7] Both Trevor and Chyna assign that the juvenile court erred in finding that the State met its burden of proof by offering sufficient evidence to adjudicate the minor children under § 43-247(3)(a). The purpose of the adjudication phase is to protect the interests of the child. *In re Interest of*

- 423 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

*Xandria P.*, 311 Neb. 591, 973 N.W.2d 692 (2022). The parents' rights are determined at the dispositional phase, not at the adjudication phase. *Id*. At the adjudication stage, in order for a juvenile court to assume jurisdiction of minor children under § 43-247(3)(a), the State must prove the allegations of the petition by a preponderance of the evidence. *In re Interest of Xandria P., supra.*

[8] Here, the State alleged that the children lacked proper parental care by reason of the faults or habits of Trevor and Chyna. "Proper parental care" under § 43-247(3)(a) includes providing a home, support, subsistence, education, and other care necessary for the health, morals, and well-being of the child. *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). It commands that the child not be placed in situations dangerous to life or limb, and not be permitted to engage in activities injurious to his or her health or morals. *Id*.

Determining whether a juvenile lacks proper parental care by reason of the faults or habits of his or her parent is a two-step inquiry. See *id*. The first step is to determine if the juvenile is lacking proper parental care, whether such care is being provided by a parent, a guardian, or a custodian. *Id*. If the juvenile is not lacking that type of care (and there is no definite risk of harm), adjudication under this provision of § 43-247(3)(a) is improper. See *In re Interest of Jeremy U. et al., supra*. If, on the other hand, the juvenile is lacking such care, the court should proceed to the second step: Does that condition result from the fault or habits of the juvenile's parent, guardian, or custodian? *Id*. If the answer to that question is also yes, then the juvenile court should take jurisdiction of the juvenile and proceed to a proper disposition. *Id*.

The evidence the State presented established that the children lacked proper parental care due to the faults or habits of Trevor and Chyna and were at risk of harm. The eight children were living in a van with Trevor and Chyna. Trevor told officers the family had been in Nebraska for about a week, but

- 424 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

he had a charge in Lancaster County with an offense date of January 25, 2025, approximately 3 months prior. Other evidence presented indicated that the family had been in Nebraska for as long as 10 months. Although three of the children required car seats, officers did not observe any in the van. Trevor had methamphetamine on his person when arrested. Officers observed a strong smell of body odor and some of the children had dirty clothes and matted hair. The children would use a "porta potty" in the van when they looked too "messy" to go into stores to use the bathroom.

Thai had molars that had rotted badly enough that parts of the teeth were missing, Aa'ziyahn had significant dental issues, and Trevor Jr. had cavities. Thai stated he had never been to a doctor. Aaneiyah reported that a certain allergy medicine was "pretty good" because it would help with sleep or with allergies, and she would take it "a lot." Although the children all reported having food, Trevor Jr. stated he did not always get to eat as much as he wanted, and Thai confirmed there were times he was hungry and not able to eat and he would "act up."

Aylah and Aaneiyah reported they participated in online school, but Trevor Jr. stated that they had stopped online school sometime in 2024. The children panhandled to earn money. Thai recalled the children being left alone while Trevor and Chyna would "play slots." Both Trevor Jr. and Thai stated the van could get very hot. Overall, the evidence showed the children lacked proper parental care by reason of the faults or habits of Trevor and Chyna and were at risk of harm.

Trevor argues that "[w]hen the State alleges only lack of parental care through the faults or habits of a parent, the adjudication of the parent cannot be premised on facts specifically covered by the other, uncharged, grounds for adjudication under §43-247(3)(a)." Brief for appellant at 24. Chyna advances a similar argument. In support of this argument, Trevor relies on *In re Interest of Jeremy U. et al.*, 304 Neb. 734, 936 N.W.2d 733 (2020). In that case, the State argued

- 425 -

Nebraska Court of Appeals Advance Sheets
34 Nebraska Appellate Reports
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

that "lack[ing] proper parental care" under § 43-247(3)(a) included abandonment, but the court found the argument unpersuasive. *Id*. Because § 43-247(3)(a) included abandonment as a separate ground, the court determined that "lack[ing] proper parental care" under the statute focused on something other than abandonment, which the State had not alleged. See *In re Interest of Jeremy U. et al., supra.*

Since homelessness and destitution are listed as separate grounds for adjudication under the statute, Trevor argues it is improper to consider evidence directly related to those issues because the State did not allege them as bases for adjudication. Chyna argues that the State could not rely on evidence that "would more naturally prove up" other, uncharged bases to establish the children lacked proper parental care. Brief for appellee on cross-appeal at 30. But here, the children were not adjudicated because they were homeless or destitute through no fault of Trevor or Chyna. Rather, they were adjudicated because the State presented evidence that, due to the faults or habits of Trevor and Chyna, they lacked proper parental care and were at risk of harm. Although the evidence presented may have established the children were homeless and destitute, it also proved the allegation in the petitions.

The evidence further established that the older children had experienced harm resulting from the lack of proper parental care. This included poor hygiene, dental issues, and inconsistent schooling, as well as having to panhandle to earn money to support the family. The younger children, being in the same environment, are at risk of experiencing that same harm. The Nebraska Juvenile Code does not require a juvenile court to wait until disaster has befallen a minor child before the court may acquire jurisdiction. See *In re Interest of Prince R.*, 308 Neb. 415, 954 N.W.2d 294 (2021). The State showed that the children lack proper parental care through the faults or habits of Trevor and Chyna and are at risk of harm. The juvenile court did not err in finding the children to be within the provisions of § 43-247(3)(a). This assignment of error fails.

- 426 -

NEBRASKA COURT OF APPEALS ADVANCE SHEETS
34 NEBRASKA APPELLATE REPORTS
IN RE INTEREST OF TREVOR S. ET AL.
Cite as 34 Neb. App. 412

## VI. CONCLUSION

We find that the juvenile court did not err in admitting in evidence the forensic interviews or the testimony related to them. The juvenile court did not err in finding that the children fell within the provisions of § 43-247(3)(a). We affirm the order of the juvenile court.

AFFIRMED.